UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **THE CITY OF NEW ORLEANS,** | * | |
| | * | |
| Plaintiff, | * | **CIVIL ACTION NO. 08-3949** |
| | * | |
| **VERSUS** | * | **SECTION "N" (1)** |
| | * | |
| **AMBAC ASSURANCE CORPORATION,** | * | **JUDGE KURT D. ENGELHARDT** |
| **AMBAC FINANCIAL SERVICES, LLC,** | * | |
| **PAINEWEBBER CAPITAL SERVICES,** | * | **MAGISTRATE JUDGE SALLY SHUSHAN** |
| **INC., AND UBS SECURITIES LLC,** | * | |
| | * | |
| Defendants. | * | |

**REPLY MEMORANDUM OF AMBAC ASSURANCE CORPORATION
AND AMBAC FINANCIAL SERVICES, LLC IN SUPPORT
OF THEIR MOTION TO DISMISS THE SECOND AMENDED
<u>CLAIMS OF THE CITY OF NEW ORLEANS AGAINST THEM</u>**

**TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................................ 1
II. ARGUMENT.............................................................................................................. 2
    A.    THE CITY'S BREACH OF CONTRACT CLAIM FAILS (COUNT I) ........................ 2
    B.    THE CITY'S ASSERTION OF UNJUST ENRICHMENT FAILS (COUNT II) .......... 4
    C.    THE CITY'S ASSERTION OF ERROR AS TO THE PRINCIPAL CAUSE OF THE POLICY FAILS (COUNT III)....................................................................... 5
        1.    The City ignores the terms of the Policy in determining its principal cause. .......... 5
        2.    The City's alleged error did not exist when the Policy was issued. ....................... 5
    D.    THE CITY'S FRAUD IN THE INDUCMENT CLAIMS FAIL (COUNTS IV AND V) ........................................................................ 6
        1.    The City did not respond to AAC and AFS's arguments concerning Rule 9(b). ... 6
        2.    The allegations concerning the City's own resolutions cannot give rise to liability for fraudulent inducement................................................................... 7
        3.    The allegations concerning the statements in AFG's 10-K cannot give rise to liability for fraudulent inducement. ............................................................ 8
        4.    The City fails to adequately allege an intent to defraud. ........................................ 8
    E.    THE CITY'S NEGLIGENT MISREPRESENTATION CLAIM FAILS (COUNT VI) 9
    F.    THE CITY'S RESPONSE BAD FAITH CLAIM FAILS (COUNT VII)....................... 9
    G.    THE CITY'S BREACH OF SWAP CLAIMS FAIL (COUNTS VIII & IX).................. 9
    H.    THE CITY'S TORTIOUS INTERFERENCE CLAIMS FAIL (COUNTS X & XII) .. 10
    I.    THE CITY'S DETRIMENTAL RELIANCE CLAIM FAILS (COUNT XIII) ............ 10
III. CONCLUSION........................................................................................................ 10

# **TABLE OF AUTHORITIES**

**CASES**

*Abrams v. Baker Hughes Inc.*,
 292 F.3d 424 (5th Cir. 2002) ..................................................................................................8

*Carlisle v. Sotirin*,
 No. Civ.A.04-1549, 2005 U.S. Dist. LEXIS 490 (E.D.La. Jan.12, 2005) ..............................10

*Drs. Bethea, Moustoukas & Weaver LLC v. St. Paul Guardian Ins. Co.*,
 376 F.3d 399 (5th Cir. 2004) ..................................................................................................5

*Heck v. LaFourche Parish Council*,
 860 So. 2d 595 (La. Ct. App. 2003).........................................................................................4

*Hibernia Cmty. Dev. Corp. v. U.S.E. Cmty. Servs. Grp., Inc.*,
 166 F. Supp. 2d 511 (E.D. La. 2001).....................................................................................10

*Hirsch v. Miller*,
 167 So. 2d 539 (La. Ct. App. 1964).........................................................................................4

*In re Ambac Fin. Grp., Inc. Secs. Litig.*,
 693 F. Supp. 2d 241 (S.D.N.Y. 2010).....................................................................................8

*In re FBR Inc. Sec. Litig.*,
 544 F. Supp. 2d 346 (S.D.N.Y. 2008).....................................................................................8

*Jones v. Breaux*,
 289 So. 2d 110 (La. 1974) .......................................................................................................2

*Murungi v. Tex. Guaranteed*,
 693 F. Supp. 2d 597 (E.D. La. 2010).......................................................................................9

*NPS, LLC v. Ambac Assurance Corp.*,
 No. Civ. 08-11281 (DPW), 2010 WL 723786 (D. Mass. Feb. 25, 2010).........................2, 3, 8

*Pelican Plumbing Supply, Inc. v. J.O.H. Construction Co.*,
 653 So. 2d 699 (La. App. 5 Cir. 1995) ................................................................................ 3-4

*Soll v. Provident Life & Accident Ins. Co.*,
 No. CIV. A. 00-3670 (KDE), 2002 WL 1379183 (E.D. La. June 26, 2002)............................3

*Water Works Board of the City of Birmingham v. Ambac Financial Group, Inc.*,
 No. CV-09-AR-2296-5, 2010 WL 2506087 (N.D. Ala. Apr. 1, 2010).............................. 1-2, 3

**STATUTES**

La. Rev. Stat. Ann. § 22:867 (2008) ........................................................................................2, 4

**OTHER AUTHORITIES**

Rule 9(b) ................................................................................................................................. 7-10

Rule 9(b)'s ..................................................................................................................................7

S. 22:867 ....................................................................................................................................2

Ambac Assurance Corporation ("AAC") and Ambac Financial Services, LLC ("AFS") submit this memorandum in reply to The City of New Orleans' Memorandum in Opposition to the Motion of the Ambac Defendants to Dismiss the Second Amended and Supplemental Complaint (the "City's Response").

## I.     INTRODUCTION

The City correctly frames the principal issue in this matter—"whether Ambac obligated itself to provide to the City credit enhancement for the full term of the Bonds." City's Response at 3. The answer is no. Neither AAC nor AFS ever made such a promise, and the City cannot point to a single document that sets forth such a promise. To the contrary, the documents expressly acknowledge that AAC and AFS could be downgraded, that AAC insured structured products such as mortgage backed and asset backed securities, that the City fully understood the risks involved with its financing decision and disclosed those risks to the bondholders.

Louisiana law provides that AAC's obligations are defined exclusively by the Policy. AAC's only obligation under the Policy is to pay the bondholders if the City defaults. AAC stands ready to do so, and the City does not allege otherwise. There has been no breach, and no cause of action exists. As the Court in *Water Works Board of the City of Birmingham v. Ambac Financial Group, Inc.*, No. CV-09-AR-2296-5, 2010 WL 2506087, at *3 (N.D. Ala. Apr. 1, 2010) found, it "would defy logic and common sense for Ambac to obligate itself to maintain for [30] years the highest possible credit rating, when the determination and award of credit ratings are by separate entities." In short, the City "did not bargain for, and did not obtain, a promise that Ambac will maintain a AAA credit rating, and the [City] cannot ask the Court to imply such simply because it has suffered financial harm that would have resulted from the breach of the contract that the [City] **imagines**, but does not have." *Id*. at *4 (emphasis in original).

1

II.     ARGUMENT

While the City is quick to criticize three different federal court opinions[1] dismissing very similar matters—describing them as "incomplete" and "poorly-reasoned" (City's Response at 14, 20)—the City fails to offer any credible basis for this Court to disregard those opinions and fails to offer any cogent explanation of how AAC or AFS can be liable under the Policy and alleged facts. Thus, for the reasons set forth herein and in AAC and AFS's Memorandum in Support of Their Motion to Dismiss the Second Amended Claims ("Ambac's Memorandum"), the City's claims should be dismissed with prejudice.

A.     THE CITY'S BREACH OF CONTRACT CLAIM FAILS (COUNT I)

Louisiana statutory and common law is well-settled that (i) an insurance policy governs the obligations of an insurer, and (ii) such obligations cannot be expanded absent a written amendment attached to the policy. *See* Ambac Memorandum, § III-A(1); La. Rev. Stat. Ann. § 22:867 (2008). "The purpose of R.S. 22:867 is to furnish both parties with the entire contract between them at the time of the contract's formation to enable them to be informed of its terms." *Jones v. Breaux*, 289 So. 2d 110, 112 (La. 1974). Further, when "the words are clear and explicit, a court must interpret the contractual provisions as written; courts lack authority to alter the terms of an insurance contract under the guise of contractual interpretation, when the contractual provisions are couched in unambiguous terms." *Soll v. Provident Life & Accident Ins. Co.*, No. CIV. A. 00-3670 (KDE), 2002 WL 1379183, at *4 (E.D. La. June 26, 2002).

The City does not argue that the Policy is ambiguous or that a written amendment is attached thereto. Instead, the City states that "the arrangement in the Policy differs from a

---

[1] *In re Merrill Lynch Auction Rate Sec. Litig.*, No. 09 MD 2030, 2010 WL 1924719 (S.D.N.Y. May 11, 2010), *NPS, LLC v. Ambac Assurance Corp.*, No. Civ. 08-11281 (DPW), 2010 WL 723786 (D. Mass. Feb. 25, 2010), and *Water Works*.

2

typical insurance policy . . ..dq City's Response at fn. 5.  The City seems to be implying that Louisiana insurance law does not apply here.  But simply stating that the Policy "differs" from a typical insurance policy does not mean that Louisiana insurance law is inapplicable.  While insuring a municipal bond offering obviously is different than insuring a home or car, the statute applies to all insurance policies and the important principals behind the statute—*i.e.*, providing clarity of what is being insured by requiring the obligations to be set forth in writing and not subject to amendment except by writing—apply with full force here.  As do basic principals of contract law, which hold that a plain and unambiguous contract cannot be rewritten or interpreted to expand the parties' obligations thereunder.

Citing inapposite case law, the City refers to other documents and resolutions to which neither AAC nor AFS are parties in an attempt to create obligations upon them that do not exist.  The City's principal claim is that these other documents obligate AAC to maintain a AAA credit rating for the full 30-year term of the Bonds and thus guarantee credit enhancement for the full term of the bond.[2]  The City provides no authority, however, in support of its position that a municipal bond insurer may have obligations beyond the terms of its unambiguous policy.[3]

---

[2] The City attempts to distinguish its principal claim in this matter from those in *Merrill Lynch, NPS, and Water Works* by arguing that it does not base "its claims against Ambac on the proposition that it had a duty to maintain a AAA NRSRO rating; rather, the City's claim is that Ambac had a duty to conduct its business in such a manner as to not jeopardize its NRSRO ratings."  City's Response at fn. 18.  This is a distinction without a difference.  No matter how the City attempts to pitch it, its claims are based on the allegation that AAC lost its AAA credit rating in breach of some duty to maintain it, and therefore breached a duty to provide "credit enhancement" over the thirty-year life of the bonds.

[3] The City cites *Pelican Plumbing Supply, Inc. v. J.O.H. Construction Co.*, 653 So. 2d 699, 701 (La. App. 5 Cir. 1995) for the proposition that the Policy can be part of a larger, oral agreement.  *Pelican Plumbing*, however, did not involve an insurance policy and, as previously discussed, La. Rev. Stat. Ann. § 22:867 (2008) precludes oral modifications to insurance policies.  In any event, there is no credible allegation or any evidence remotely suggesting that there were any oral representations of guaranteed thirty-year "credit enhancement" for the bonds.

3

Indeed, the resolutions do not impose obligations upon AAC or AFS.[4] Nor do contracts to which AAC and AFS are not parties even though they may relate to the same underlying transaction.[5]

But even assuming that the City's resolutions and contracts with other parties are relevant to determine AAC's and AFS's obligations (which they are not), none of them obligate AAC or AFS maintain a AAA credit rating for the full 30-year term of the Bonds. This is not surprising as the documents that were negotiated, drafted, or reviewed by the City's battery of financial and legal advisors specifically contemplate the possibility that AAC could be downgraded and specifically identify all parties' rights and obligations in the event of a downgrade. Notably absent from these rights and obligations in the event of a downgrade is a provision requiring AAC to refund its premium, pay a penalty, or pay any other remuneration. Accordingly, because (i) AAC has a single obligation under the Policy, (ii) there is no allegation that the obligation has been breached, and (iii) AFS is not a party to a contract with the City, AAC and AFS are entitled to dismissal of the City's contract claims.

### B. THE CITY'S ASSERTION OF UNJUST ENRICHMENT FAILS (COUNT II)

---

[4] The City argues that its resolutions "are incorporated into and form a part of the contract as though expressly written into it." City's Response at fn. 10 (*citing Heck v. LaFourche Parish Council,* 860 So. 2d 595, 603 (La. Ct. App. 2003)). The City's reliance on *Heck*, however, is misplaced. *Heck* does not imply that a municipality can unilaterally alter a contract through non-legislative resolutions. Rather, to the extent that there is contractual ambiguity, the law in existence when the contract was executed is assumed to provide a framework for interpreting contractual terms. *Heck*, 860 So. 2d at 603-04. Here, there is no ambiguity in the Policy—the only "risk" insured is non-payment to the bondholders. Further, the resolutions are entirely consistent with the Policy and do not impose additional obligations upon AAC.

[5] The City's citation to *Hirsch v. Miller*, 167 So. 2d 539 (La. Ct. App. 1964) for its proposition that AAC and AFS can be bound by agreements that they are not parties to is misleading. In *Hirsh*, the court held that the sole owner of a pest control business who signed a contract in his individual capacity also executed it on behalf of his corporate entity. It does not find that different corporate entities can be bound by contracts they did not execute.

4

As discussed in § III-B of Ambac's Memorandum, the Policy and the benefit which was and continues to be received by the bondholders precludes the City's unjust enrichment claim against AAC.[6] The two unjust enrichment cases cited by the City in its UBS Response are not persuasive because the plaintiffs therein were permitted to bring unjust enrichment actions only where there was "no other remedy at law" for the damages sought. The Policy provides the City a remedy at law. Accordingly, the City's unjust enrichment claim fails.

### C. THE CITY'S ASSERTION OF ERROR AS TO THE PRINCIPAL CAUSE OF THE POLICY FAILS (COUNT III)

#### 1. The City ignores the terms of the Policy in determining its principal cause.

The City argues that the principal cause of the Policy was to provide AAA credit enhancement for the full 30-year term of the Bonds. Louisiana law is clear, however, that in searching for the intent of the parties entering into an insurance contract, the Court must first look to the terms of the policy and look no further when such terms are clear and explicit. *See* Ambac Memorandum, § III-C. The terms of the Policy are clear and explicit in stating that the Policy insures only the risk of non-payment by the City and specifically excludes all other risks. The Policy does not mention AAC's rating, underwriting practices, or credit enhancement. Thus, insuring the City's payments is the only principal cause permitted as a matter of law.

#### 2. The City's alleged error did not exist when the Policy was issued.

As discussed in § III-C of Ambac's Memorandum, the City's alleged error concerning credit enhancement did not exist in 2000 as it is undisputed that the Bonds benefitted from AAC's AAA rating from 2000 to 2008. Accordingly, there is no cause of action for error in the

---

[6] *See Drs. Bethea, Moustoukas & Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 407-08 (5th Cir. 2004) (unjust enrichment claim fails where policy defined insurance coverage and there was no impoverishment because policyholders received the benefit of the insurance protection even if the conditions were not realized).

5

principal cause. In apparent recognition of this flaw, the City also argues that Ambac Financial Group, Inc.'s ("AFG") statements in its 1999 public filings concerning its risk management were the principal cause for the Policy. While such an argument is creative, it finds no support in the Policy or the allegations in the Second Amended Complaint. As previously discussed, the terms of the Policy explicitly state that the only risk it insures against is non-payment by the City and does not mention underwriting practices. Further, the City fails to allege that it read the filings before purchasing the Policy. And even those very filings disclose fully that AAC, in fact, insured tens of billions of dollars in structured financial products including mortgage backed and asset backed securities. Accordingly, the City cannot avoid dismissal of its claim.

      D.      **THE CITY'S FRAUD IN THE INDUCMENT CLAIMS FAIL (COUNTS IV AND V)**

              1.      **The City fails to meet the pleading requirements of Rule 9(b).**

The City does not dispute that it fails to plead its fraudulent inducement claims with particularity as required by Rule 9(b). Instead, the City incorporates its UBS Response wherein it argues that it is relieved from Rule 9(b)'s requirements because its claims are based on alleged omissions. City's Response at 28; City's UBS Response at 22-23. Count IV, however, is based in part on alleged affirmative misrepresentations. Because the City did not plead such misrepresentation claims with the requisite particularity as discussed in § III-D(1) of Ambac's Memorandum, the misrepresentation claims fail.

Further, the City makes no effort to show how AAC and AFS's alleged omissions set forth in Counts IV and V meet the pleading requirements for omissions.[7] As discussed in § III-

---

[7] When the alleged fraud is based on suppression of information, the party must allege "(1) the information that was withheld, (2) general time period during which the fraudulent conduct occurred, (3) the relationship giving rise to the duty to speak, and (4) what the person or entity engaged in the fraudulent conduct gained by withholding the information." *Chrysler Credit Corp. v. Whitney Nat'l Bank*, 824 F. Supp. 587, 598 (E.D. La. 1993).

6

D(1) of Ambac's Memorandum, the City fails to allege any specific facts concerning the alleged omission or relationships allegedly giving rise to AAC's and AFS's duty to speak, such as who at AAC and AFS had contact with the City, on what dates such contacts occurred, who on the City's behalf had contact with AAC and AFS (financial advisors, attorneys, etc.), and what the individuals at AAC and AFS gained by allegedly withholding the information. Accordingly, the City's fraud in the inducement claims fail to meet Rule 9(b)'s requirements and must be dismissed.

### 2. The allegations concerning the City's own resolutions cannot give rise to liability for fraudulent inducement.

The City argues that AAC's alleged participation in the drafting of the City's resolutions somehow misled the City into believing that the City actually had contracted with AAC for a guaranteed thirty-year credit enhancement of the bonds. City's Response at 28-30. This argument is nonsensical. The plain language of the Policy directly contradicts the City's position because the Policy contains no such promise. Further, the City's allegations are hopelessly vague and do not satisfy the City's pleading requirement under Rule 9(b). The City does not state which AAC and AFS representatives allegedly participated in such drafting, who on behalf of the City they worked with, or what such AAC and AFS representatives may have said or represented with respect to the resolutions. More fundamentally, the resolutions do not state that AAC guarantees its AAA rating for the 30-year term of the Bonds and are consistent with the Policy. Finally, the City provides no support for its position that negotiations of rights under the resolutions amongst sophisticated entities gives rise to a special relationship and duty of disclosure.[8]

---

[8] The City's effort to liken itself to a consumer buying a car with defective paint (City's Response at 34) is unavailing and disregards the undisputed facts that the City was represented in this transaction by a battery of highly sophisticated financial advisors and attorneys.

7

### 3. The allegations concerning the statements in AFG's 10-K cannot give rise to liability for fraudulent inducement.

The City's argument that AFG's statements concerning AAC's underwriting practices in its Form 10-K fraudulently induced the City to purchase the Policy similarly fails. The City fails to allege that any of its advisors even read the statements in 2000. Further, the City fails to allege that any of the factual information in the statements was incorrect, and statements such as "Ambac seeks to minimize risk" are not actionable as a matter of law.[9] Accordingly, the statements in the 10-K are not actionable.

### 4. The City fails to adequately allege an intent to defraud.

The City argues that its allegations in paragraph 158 and 166 of the Amended Complaint[10] sufficiently allege AAC's and AFS's intent to defraud. Such conclusory allegations of intent, however, do not satisfy Rule 9(b).[11] Accordingly, the City's fraudulent inducement claims fail.

---

[9] *See NPS, LLC,* 2010 WL 723786 at *9 (D. Mass. Feb. 25, 2010) (statements of opinion regarding the quality of Ambac's services as "strong and diversified" were not actionable); *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 432-33 (5th Cir. 2002) (statements that there were "no accounting issues" insufficient to constitute an actionable misrepresentation); *In re FBR Inc. Sec. Litig.*, 544 F. Supp. 2d 346, 359-60 (S.D.N.Y. 2008) (statements that company had an extensive risk management program that would assess and protect against certain corporate risks and exposures did not constitute actionable representation). The City cites *In re Ambac Fin. Grp., Inc. Secs. Litig.*, 693 F. Supp. 2d 241 (S.D.N.Y. 2010) to refute the *NPS* holding. In *In re Ambac*, however, the court held that Ambac's filings had failed to reflect changes in its underwriting practices and financial outlook between 2005 and 2009. For that reason, the court held that statements made that Ambac was continuing to follow its historically conservative underwriting standards as it had "over the years" were materially misleading. *In re Ambac,* 693 F.Supp.2d at 270. The alleged misrepresentations in that case were different than those alleged here, and dealt with a different time period than here. Accordingly, that case is inapposite.

[10] The City alleges in those paragraphs that AAC made misrepresentations or omissions to "obtain and unjust advantage," that AAC and AFS "intended that the City rely," and that the "non-disclosure was intended to induce the City." City's Response at 25.

[11] *See Murungi v. Tex. Guaranteed*, 693 F. Supp. 2d 597, 603 (E.D. La. 2010) (simple allegations that defendant possesses fraudulent intent will not satisfy Rule 9(b)); aff'd, No. 10-30238, 2010 WL 3736227 (5th Cir. Sept. 16, 2010).

8

### E. THE CITY'S NEGLIGENT MISREPRESENTATION CLAIM FAILS (COUNT VI)

As discussed in § III-E of Ambac's Memorandum, the City fails to (i) plead an actionable misrepresentation; (ii) plead its negligent misrepresentation claim with particularity as required by Rule 9(b); (iii) plead a special relationship giving rise to a duty of disclosure; (iv) plead that the City was justified in its alleged reliance; and (v) explain why the documents and disclosures do not undermine its claims. The four sentences in the City's Response added no clarity or viability to the City's three sentences in the Second Amended Complaint that set forth its negligent misrepresentation claim. Thus, the claim should be dismissed.

### F. THE CITY'S BAD FAITH CLAIM FAILS (COUNT VII)

As discussed in § III-F of Ambac's Memorandum, AAC cannot act in bad faith when it has not breached its sole obligation under the Policy. Louisiana law does not recognize alleged contractual obligations beyond the Policy and, thus, AAC could not have performed such alleged obligations in bad faith. Further, the City has provided no authority for its proposition that alleged mismanagement of one's own business gives rise to a claim by a third-party without a breach of a duty owed to that party. The only duty AAC owes in this matter is to pay if the City does not, and there is no allegation that AAC has breached this obligation or announced an intent to do so. Without such an allegation, AAC cannot be found to have breached a duty owed to the City, and certainly cannot be found to have done so in bad faith.

### G. THE CITY'S BREACH OF SWAP CLAIMS FAIL (COUNTS VIII & IX)

As discussed in § III-G of Ambac's Memorandum, Louisiana law requires contractual privity for a breach of contract claim. It is undisputed that AAC and AFS are not parties to the City's Swap Agreement with PWCSI, and the City offers no cogent explanation of how they can breach an agreement to which they are not parties. AFS's Reciprocal Swap with PWCSI was

9

simply a risk sharing agreement between those parties that cannot infringe on the City's rights under its agreement with PWCSI. The City has presented no agreements or authority that provide otherwise. Accordingly, the City's breach of swap claims fail.

### H. THE CITY'S TORTIOUS INTERFERENCE CLAIMS FAIL (COUNTS X & XII)

As discussed in § III-H of Ambac's Memorandum, tortious interference claims may only be asserted against corporate officers who interfere with their company's contracts.[12] The City's citation to *Carlisle v. Sotirin*, No. Civ.A.04-1549, 2005 U.S. Dist. LEXIS 490 (E.D.La. Jan.12, 2005) for its proposition that "absence of justification is acting beyond the scope of authority or in a manner adverse to a company's interests" is misleading as the act must be adverse to the officer's company. City's Response at 37. Obviously, AAC and AFS are not corporate officers acting adversely to their company's interests. Accordingly the City's claim fails.

### I. THE CITY'S DETRIMENTAL RELIANCE CLAIM FAILS (COUNT XIII)

As previously discussed herein and in § III-I of Ambac's Memorandum, the City does not adequately plead an actionable misrepresentation concerning credit enhancement. Further, it is not justifiable for a sophisticated, well-represented entity such as the City to rely on vague assertions outside of the Policy as a matter of law. Accordingly, the City's claim fails.

## III. CONCLUSION

For the reasons set forth in Ambac's Memorandum and those herein, the City's claims should be dismissed with prejudice.

---

[12] *See Hibernia Cmty. Dev. Corp. v. U.S.E. Cmty. Servs. Grp., Inc.*, 166 F. Supp. 2d 511, 514 (E.D. La. 2001) (tortious interference under Louisiana law is a narrow cause of action that only applies to a corporate officer who interferes with a contract between his company and a third party).

PHELPS DUNBAR LLP


By: s/ Bruce V. Schewe
    Brent B. Barriere (La. Bar No. 2818)
    Bruce V. Schewe (La. Bar No. 11771)
    Canal Place
    365 Canal Street, Suite 2000
    New Orleans, Louisiana 70130-6534
    Telephone: (504) 566-1311
    Facsimile: (504) 568-9130
    Email:   barriereb@phelps.com
                scheweb@phelps.com

    Of Counsel:

    **KING & SPALDING LLP**
    Richard T. Marooney
    William O. L. Hutchinson
    1185 Avenue of the Americas
    New York, NY 10036-4003
    Telephone: (212) 556-2100
    Facsimile: (212) 556-2222

**ATTORNEYS FOR AMBAC ASSURANCE CORPORATION AND AMBAC FINANCIAL SERVICES, LLC**

**CERTIFICATE OF SERVICE**

     I hereby certify that I have on this 30th day of September 2010, electronically filed the foregoing with the Clerk of Court by using the CM/ECF system that will send notice of electronic filing to all counsel of record who have consented to electronic notification and have served a copy of the foregoing by United States Mail, properly addressed, postage prepaid, and/or telecopy on all other persons listed on the Court's mailing matrix.

                                                /s/ Bruce V. Schewe