UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| THE CITY OF NEW ORLEANS, | * | CIVIL ACTION NO. 08-3949 |
|     Plaintiff | * | |
| | * | SECTION "N" (1) |
| VS | * | |
| | * | JUDGE ENGELHARDT |
| AMBAC ASSURANCE CORPORATION, | * | |
| AMBAC FINANCIAL SERVICES, LLC, | * | MAGISTRATE SHUSHAN |
| PAINEWEBBER CAPITAL SERVICES, | * | |
| INC., and UBS SECURITIES, LLC, | * | |
|     Defendants | * | |

**REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION
BY PAINEWEBBER CAPITAL SERVICES, INC. AND UBS SECURITIES, LLC**

After arguing at every point in this case that notice of the Reciprocal Swap was required under § 7(a)(iii), the City now concedes that this subsection does not apply. As explained below, this concession eviscerates the City's remaining claims, which have always been predicated on the notice provision of § 7(a)(iii).

The claims in this case that have not yet been dismissed center on the City's unfounded assertion that § 7(a)(iii) of the Swap required PWCSI to provide notice of the Reciprocal Swap—even though § 7(a)(iii) would only be applicable if PWSCI transferred *all* of its "rights and obligations" under the Swap to an Ambac affiliate, which is not alleged and did not happen. Throughout this case, the City has vigorously and repeatedly asserted—in its Complaint, in its Opposition to the UBS Defendants' motion to dismiss, and at the hearing on the motion to dismiss—that the UBS Defendants breached § 7(a)(iii) of the Swap by not providing *notice* as required by § 7(a)(iii). The City has never once argued it had the right to *consent* to the "transfers" it complains about. The City's notice claim was the one the Court declined to

dismiss on the limited briefing that was before it on the UBS Defendants' motion to dismiss. *See* Tr. 55:21 (stating that interpretation of § 7 "bears further briefing") 55:7-11 ("Even accepting the PaineWeb[b]er interpretation of Section 7(c) might be correct, whether the Swap required the consent of the City is irrelevant to the requirement that PaineWeb[b]er must give prior written notice of the Reciprocal Swap under Section 7(a)(3).").

Now, in bold italicized type in its Opposition to the Motion for Reconsideration, the City backs away from its long-argued position and its own allegations, explicitly conceding that § 7(a)(iii) is inapplicable. *See* Opp. to Mot. for Reconsideration at 11. For this reason alone, the Court should reconsider its ruling on the UBS Defendants' motion to dismiss and grant that motion in its entirety.

## I. The City Admits that § 7(a)(iii)—the Only Provision Requiring Notice—Is Inapplicable

The basis of the City's originally-pleaded claims was that PWCSI did not provide notice as required by § 7(a)(iii). But in its Opposition the City makes two fatal concessions that show PWCSI did not need to provide notice: The City agrees that (1) notice was not required *except* to satisfy § 7(a)(iii) (as the UBS Defendants have argued all along); and (2) § 7(a)(iii) does not apply here (as the UBS Defendants have argued all along). *See* Opp. to Mot. for Reconsideration at 11.[1] These concessions gut the City's entire argument.

The City inexplicably contends it has addressed § 7(a)(iii) and that paragraph's notice requirement only because it "assumed that Defendants would rely on Amended Section 7(a)(iii)." Opp. to Mot. for Reconsideration at 11. In fact, the relevance of § 7(a)(iii) to this

---

[1] Instead the City now says that notice would be required only as a way to satisfy the § 7(a)(iii) exception to § 7(a)'s general transfer provisions: "Thus, if [§ 7(a)(iii)] does not apply, PWCSI's reciprocal swap with AFS was subject to the general Amended Section 7(a) prior written consent requirement . . . ." *Id.* at 12. But the UBS Defendants have never argued that satisfying § 7(a)(iii) would defeat a duly-pleaded transfer claim.

litigation was first argued in the City's opposition to the motion to dismiss. The UBS Defendants' argument has always been that *no* applicable part of § 7 requires notice. Because the City agrees that notice is required only under § 7(a)(iii) and that § 7(a)(iii) itself would be relevant only to the extent it provides for one of several kinds of valid transfers, the City's claim for breach of the Swap—which, again, has *always* been predicated on a simple lack of notice, *see, e.g.*, Compl. ¶ 183—must fail.[2] If notice is not required—as both sides now agree it is not—then the basis of the City's claim vanishes because PWCSI could not have breached the Swap by failing to provide something that was not required to be provided.

## II.     PWCSI Complied with § 7 of the Swap

To the extent the City now argues that its claim is based on a lack of consent, that is a new claim the City has never pleaded or argued. Moreover, nothing in the City's Opposition casts doubt on the UBS Defendants' arguments that PWCSI complied with § 7 because (1) the Reciprocal Swap did not transfer anything and (2) even if § 10 of the Reciprocal Swap is construed as a transfer, then § 7(c) of the Swap satisfies § 7's general transfer restrictions.

### A.     PWCSI Transferred Nothing by the Reciprocal Swap

The Reciprocal Swap did not transfer any rights or obligations. It is well-recognized that a "reverse" or "mirror" swap like the Reciprocal Swap leaves the original swap "undisturbed."

---

[2] The City also misreads § 7(a)(iii) when it argues that "not all of [the rights and obligations] must be transferred" for § 7(a)(iii) to apply. Opp. at 12. Section 7(a)(iii) plainly uses the word "all" not "any" (in contrast to, for instance, § 7(a)(ii) and the opening phrase of § 7(a) itself). Moreover, the City's reliance on the word "may" is misplaced—"may" simply means that a party is permitted to transfer the entire agreement, provided that it satisfies § 7(a)(iii)'s requirements, not that a party is forced to transfer the entire agreement, which would make no sense. Section 7(a)(iii)(1) further demonstrates that the City's reading is mistaken: one of the conditions for a satisfactory § 7(a)(iii) transfer is that "the transferee accepts and assumes ***all*** of the transferor's obligations." App. 275 (emphasis added). Thus a transfer of only *some* obligations, like the City contends the first clause of § 7(a)(iii) covers, would not trigger the notice requirement in § 7(a)(iii). Section 7(a)(iii) makes sense only if the modifier "all" means just what it says: all.

3

Eugene Y. Ferrer, *Tax Treatment of Interest Rate Swaps at Disposal:  Should Swap Participants Have Their Cake and Eat It Too?*, 26 U.S.F. L. Rev. 283, 292 (1992).  And "[t]he rights and obligations under the original swap are not extinguished."  Mark D. Young & William L. Stein, *Swap Transactions Under the Commodity Exchange Act:  Is Congressional Action Needed?*, 76 Geo. L.J. 1917, 1934 (1988).  Because all the rights and obligations under the Swap remained undisturbed, there was no transfer.  The Reciprocal Swap as a whole simply hedged PWCSI's interest-rate risk.  Just as the City did not "transfer" its rights or obligations vis-à-vis the bondholders, PWCSI did not "transfer" its rights or obligations vis-à-vis the City.  The City's conclusory assertion that a "transfer" occurred is entirely unexplained and without authority.  *See* Opp. to Mot. for Reconsideration at 10-11.

Section 10 of the Reciprocal Swap also was not a transfer; rather, it placed conditions on PWCSI's exercise of certain rights.  The City argues that § 10 "transferred unconditionally to Ambac at least some PWCSI rights under the Swap" and gave Ambac "control."  Opp. to Mot. for Reconsideration at 10.  This is incorrect.  The words of § 10 are words of limitation, not words of transfer.  As the UBS Defendants explained in their Motion for Reconsideration, Ambac cannot unilaterally change or do anything under the Swap; PWCSI might breach the Reciprocal Swap by taking an action absent Ambac's direction, but that would not affect in any way the City's obligations or rights under the Swap—it would matter only for whether PWCSI breached the Reciprocal Swap.  That is why the Court held that the Reciprocal Swap did not place the City and Ambac in privity.

B.   Even If § 10 Were a Transfer, Then § 7(c) Would Satisfy the General Consent Requirement in § 7

To the extent that § 10 of the Reciprocal Swap can be construed as transferring rights—which it did not—§ 7(c) satisfies § 7(a)'s consent requirement.[3] In § 7(c), the City expressly "acknowledge[d] and *consent*[ed] to the assignment by PWCSI to [Ambac] of any rights and remedies that PWCSI has under" the Swap.  App. 276 (emphasis added).  That is, the City consented to any purported transfer that occurred via § 10 of the Reciprocal Swap.

The City makes yet another crucial concession and change of course here, expressly agreeing that § 7(c) satisfies § 7(a)'s consent requirement (again, as the UBS Defendants have argued all along).  *See* Opp. to Mot. for Reconsideration at 8 n.4 (agreeing with the UBS Defendants' argument in their reply in support of their motion to dismiss that the opening clause of § 7(a) "controls the rest of Amended Section 7"), 9 (stating that § 7(c) is an exception to § 7(a)).

And § 7(c)'s plain language is not limited to subrogation, as the City continues to assert. Had the parties wanted to limit the acknowledgement-and-consent sentence to subrogation, they easily could have done so—just as they did with the other sentences in § 7(c).  That other provisions in § 7 (or the Appendix to the Swap) might come into play only after subrogation occurs in no way implies or requires that all the provisions of § 7 come into play only after subrogation occurs, as the City suggests.  Indeed, those other provisions—like the first two sentences of § 7(c)—show that where the parties wanted to condition an event or right on subrogation, they said so explicitly.  The City may not now rewrite the contract.

---

[3] The City argues that § 7 was drafted by PWCSI, *see* Opp. to Mot. for Reconsideration at 8 n.4, but this "fact" was never alleged and is not the type of fact of which the Court may take judicial notice, especially where the provision at issue is found in the "Insurance Provisions" section of the Swap.

5

Therefore, even if the City had alleged breach based on a lack of consent rather than lack of notice—which it did not—the claim for breach of the Swap would still fail.

### III. The City Was on Notice of All Allegedly Material Facts, Including the Reciprocal Swap

As to the City's fraudulent inducement and negligent misrepresentation claims, the City argues that the Court's ruling on Ambac addressed only "knowledge of facts peculiar to Ambac and AFS, not to UBS or PWCSI and not of the actual Reciprocal Swap." Opp. to Mot. for Reconsideration at 19. Tellingly, the City fails to quote the transcript of the Court's oral ruling, for the Court's decision makes clear that these facts were noticed to the City and not "peculiar" to Ambac: the court noted that "the existence of the Reciprocal Swap," "the risk of structure recommended by UBS," and "the conflicts of interest arising from the structure recommended by UBS" were all actually or constructively known to the City. Tr. 46:20-24, 47:5-7. This Court has held that the City knew all of these deal terms, and the fact the UBS Defendants may "stand in a different relationship to the City than Ambac and AFS," Opp. to Mot. for Reconsideration at 19, cannot be a basis to attack the Court's holding. The City conflates the duty element and the concealment element—the City cannot have been induced to enter a transaction based on nondisclosure of facts that the Court has held the City knew, regardless of the relationship between the City and the UBS Defendants.

For these reasons, and as explained in the UBS Defendants' Motion for Reconsideration, the City's claims must be dismissed.

Respectfully submitted,

*/s George C. Freeman, III*

**BARRASSO, USDIN, KUPPERMAN, FREEMAN & SARVER, LLC**
George C. Freeman, III, Louisiana Bar No. 14272
Stephen H. Kupperman, Louisiana Bar No. 17890
Meredith Cunningham, Louisiana Bar No. 26465
909 Poydras Street, Suite 2400
New Orleans, LA 70112
504-589-9700

**FRESHFIELDS BRUCKHAUS DERINGER US LLP**
Walter B. Stuart, Louisiana Bar No. 12551
520 Madison Avenue, 34th Floor
New York, NY 10022
212-230-4650

**VINSON & ELKINS LLP**
David R. Woodcock, Jr.
Douglas D. Geyser
The Terrace 7
2801 Via Fortuna Drive
Austin, TX 78746
512-542-8637

**VINSON & ELKINS LLP**
Kenneth P. Held
First City Tower
1001 Fannin Street
Suite 2500
Houston, TX 77002-6760
713-758-4353

**VINSON & ELKINS LLP**
Paul S. Maco
The Willard Office Building
1455 Pennsylvania Avenue, NW
Washington, DC 20004-1008
202-639-6500

**COUNSEL FOR UBS SECURITIES LLC AND PAINEWEBBER CAPITAL SERVICES, INC.**

7

**C E R T I F I C A T E**

I hereby certify that on December 13, 2010, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all non-CM/ECF participants.

    *s/ George C. Freeman, III*

US 675273v.5