UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| THE CITY OF NEW ORLEANS<br>         Plaintiff | * | CIVIL ACTION NO. 08-3949 |
| | * | SECTION "N" (1) |
| VERSUS | | |
| | * | JUDGE KURT D. ENGLEHARDT |
| AMBAC ASSURANCE CORPORATION,<br>AMBAC FINANCIAL SERVICES, LLC,<br>PAINEWEBBER CAPITAL<br>SERVICES, INC., AND<br>UBS SECURITIES LLC<br>         Defendants | * | MAGISTRATE SALLY SHUSHAN |
| | * | |
| | * | |
| | * | |

**SURREPLY MEMORANDUM OF PLAINTIFF, THE CITY OF NEW ORLEANS,
IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION**

Plaintiff, the City of New Orleans (the "City"), submits this surreply memorandum in opposition to the Motion of Defendants, PaineWebber Capital Services, Inc. ("PWCSI") and UBS Securities, L.L.C. ("UBS") (collectively: "Defendants") to Reconsider this Court's October 14, 2010 denial of their Motion to Dismiss Counts V, VI, and VIII of the City's Second Amended and Supplemental Complaint (the "Complaint").

**INTRODUCTION**

The City has not backed away, conceded or otherwise abandoned its claim that the Reciprocal Swap was a transfer of at least some, if not all, of the Swap from PWCSI to AFS that required prior written notice to the City under Amended Section 7(a)(iii) of the Swap.

{N2239875.1}

If, however, the Reciprocal Swap was not an Amended Section 7(a)(iii) transfer, Section 10 of the Reciprocal Swap Confirmation transferred at least of some "interest or obligation in or under" the Swap to Ambac and required the City's prior written consent under Amended Section 7 of the Swap – a consent that PWCSI never obtained whether under Amended Section 7(c) or any other provision.

**Defendants mischaracterize the City's claim**.

Paragraphs 90-94 of the Complaint allege that none of the original Defendants disclosed the existence of the Reciprocal Swap to the City, that the Reciprocal Swap was material because of the transfer of control and power over the Swap from PWCSI to AFS and Ambac, created a conflict of interest, and if the City had known of the Reciprocal Swap, it would have never entered into the Swap or, at the least, would have terminated the Swap at a time more favorable to it. Rec. Doc. 83, p. 46-48.

The Complaint, Count VIII, paragraph 183 reads:

> PWCSI's entry into the Reciprocal Swap and transfer of control over the Swap to Ambac violates Section 7 of the Swap, as amended by the Schedule, Appendix 1(q), because PWCSI failed to comply with its provision by, *inter alia*, failing to provide prior notice to the City of the transfer of rights and options to Ambac and AFS.

Rec. Doc. 83, p. 77.

The City complained of the Reciprocal Swap constituting a transfer in violation of Amended Section 7 of the Swap because, "*inter alia*," - - i.e., among other things - - it took place without notice. That transfer was not the exclusive manner in which the Reciprocal Swap breached Section Amended Section 7 of the Swap and the Complaint leaves the City plenty of room to assert that, in the event inapplicability of Amended Section 7(a)(iii) of the Swap, the Reciprocal Swap breached Amended Section 7 in other respects, namely by failure to obtain the

City's prior written consent. Moreover, a prior written consent requirement certainly implies a notice requirement, too.

Finally, Defendants' Reply Memorandum effectively concedes that the City did not abandon its Amended Section 7(a)(iii) argument when, at note 2 on page 3, Defendants address the very argument that the City has made for application of that provision.

**The Reciprocal Swap was a transfer**.

If the Reciprocal Swap were no more than a hedge in the form of a "mirror" swap, the City would have no complaint because, under the authority cited in Defendants' Reply Memorandum, neither Ambac nor AFS would have had an "interest or obligation in or under" the Swap. Here, however, the Reciprocal Swap Confirmation, Section 10, gives Ambac the right to exercise control over the Swap – attributes that go beyond a simple hedge through a "mirror" swap. It is these attributes of control and not a vanilla mirror swap or hedge that gave rise to the conflict of interest alleged in the Complaint and discussed at length in the City's Opposition to Defendants' Motion for Reconsideration.

Both of the law review articles cited as authority in Defendants' Reply Memorandum antedate the 1992 ISDA Master Agreement involved in this lawsuit. Both of the articles describe assignments (a form of transfer, but not the only form) as involving assignor's sale of seemingly all of its rights and obligations and the assignee's assumption of all of those rights and obligations. *See* Eugene W. Ferrer, *Tax Treatment of Interest Rate Swaps at Disposal: Should Swap Participants Have Their Cake and Eat It Too*?, 26 U.S.F. L. Rev. 283, 291-92 (1992) ("*Interest Rate Swaps*")*;* Mark D. Young & William L. Stein*, Swap Transactions Under the Commodity Exchange Act: Is Congressional Action Needed?*, 76 Geo. LJ. 1917, 1934-35 (1988) ("*Swap Transactions*"). Nevertheless, the discussion of both assignments of swaps and "reverse"

or "mirror" swaps in those articles is instructive: "[I]n an assignment, a party sells the rights and obligations of the [swap] to an unrelated third party." *Interest Rates Swaps*, *supra*, at 291-92. *See Swap Transactions, supra*, at 1935.[1] Section 10 of the Reciprocal Swap Confirmation is an assignment, or at least a transfer, to Ambac by PWCSI of the latter's ability to take action under the Swap with the City, and is, therefore, more than just a transfer of some or all of the economic risk under the Swap.

Both original Section 7 in the ISDA Master and Amended Section 7 require prior written consent of the City to a transfer by PWCSI of "any interest or obligation in or under this Agreement [*i.e.*, the Swap]." The words "any interest" are broad enough to include the rights of control over the Swap that PWCSI gave to Ambac in Section 10 of the Reciprocal Swap Confirmation.

Basic contract law governs swaps. *See Interest Rates Swaps*, *supra*, at 292 n. 50. Under LA. CIV. CODE art. 2047, contract words and phrases should be construed according to their plain, ordinary and generally prevailing meaning, unless they have required a technical meaning. Here, Defendants have not come forth with any authority or even argued that the words "any interest" have some technical meaning. And, if there should be a question as to the scope of the "any interest" language of Amended Section 7 of the Swap, it should be construed broadly in favor of the City and against PWCSI as the party that furnished the text or drafted that provision. *See Shwartz v. Am. Express Travel Related Serv., Co.,* No. 01-646, 2003 WL 1824657 (E.D. La. Apr. 8, 2003); LA. CIV. CODE art. 2056. Thus, whether the words "any interest" are construed

---

[1] "The counterparty-assignor finds a third party in the market who will assume the assignor's swap rights and obligations. In an interest rate 'swap sale' there is usually a concomitant assignment of rights and delegation of obligations. This method is problematic if contractual restrictions on assignment exist in the swap agreement." *Interest Rate Swap*, *supra*, at 292 n. 50. (internal citations omitted).

pursuant to their plain and ordinary meaning or, if ambiguous, in favor the City, Section 10 of the Reciprocal Swap Confirmation is a transfer within the meaning of Amended Section 7 of the Swap, that, if not subject to the exception under subsection (a)(iii), required the City's prior written consent.[2]

The City's Complaint adequately stated a claim for breach of the Swap under Fed. R. Civ. P. 12(b)(6). Certainly, Defendants had fair notice of the City's breach of swap claim. If not, a simple amendment to paragraphs 90-94 of the Complaint should be permitted. *See City of Alexandria v. Cleco Corp.*, No. 05-01121, 2010 WL 114397 at *2 (W.D. La. Jan. 11, 2010) ("the Court must entertain a presumption in favor of granting parties leave to amend.").

## CONCLUSION

This Court's October 14, 2010 denial of the Defendants' Motion to Dismiss Counts V, VI, and VIII of the City's Complaint was correct and, accordingly, Defendants' Motion for Reconsideration should be denied. Alternatively, the City should be given leave to amend its allegations concerning breach of the Swap.

Respectfully submitted,

/s/ Robert B. Bieck, Jr.
ROBERT B. BIECK, JR., T.A.  (La. Bar No. 03066)
R. PATRICK VANCE  (La. Bar No. 13008)
ERIN E. GILSON  (La. Bar No. 32040)
KATHLEEN HARRISON  (La. Bar No. 31188)
Jones, Walker, Waechter, Poitevent,
 Carrère & Denègre, L.L.P.
201 St. Charles Ave., 49th Floor
New Orleans,  Louisiana 70170-5100
Tel: (504) 582-8202
Fax: (504) 589-8202

and

---

[2] The City has discussed at length proper construction of Amended Section 7(c) of the Swap and incorporates that discussion by reference.

> NANETTE JOLINETTE-BROWN
> CITY ATTORNEY
> (La. Bar No. 18967)
> BRENDA M. BREAUX,
> CHIEF DEPUTY CITY ATTORNEY
> (La. Bar No. 23428)
> City of New Orleans, Law Department
> 1300 Perdido Street, 5th Floor East
> New Orleans, Louisiana  70112
> Tel:    (504) 658-9800
> Fax:    (504) 658-9868
> *Attorneys for Plaintiff,*
> *The City of New Orleans*

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served a copy of the foregoing pleading via ECF filing to all counsel of record:

| | |
|---|---|
| Brent Bennett Barriere<br>Bruce Victor Schewe<br>PHELPS DUNBAR, LLP<br>Canal Place, 365 Canal St.<br>Suite 2000<br>New Orleans, LA 70130-6534 | Walter Stuart<br>Kenneth P. Held<br>Katherine A. Schultz<br>VINSON & ELKINS LLP<br>First City Tower, 1001 Fannin St.<br>Suite 2500<br>Houston, TX 77002-6760 |
| Richard T. Marooney, Jr.<br>Kimberly L. Frederick<br>KING & SPALDING LLP<br>1185 Avenue of the Americas<br>New York, NY 10036 | Paul S. Maco<br>VINSON & ELKINS LLP<br>The Willard Office Building<br>1455 Pennsylvania Ave., NW<br>Washington, DC 20004-1008 |
| George C. Freeman, III<br>BARRASSO USDIN KUPPERMAN<br>  FREEMAN & SARVER, LLC<br>909 Poydras St., Suite 2400<br>New Orleans, LA 70112 | David R. Woodcock, Jr.<br>VINSON & ELKINS LLP<br>The Terrace 7<br>2801 Via Fortuna Drive<br>Austin, TX 78746 |
| Douglas Geyser<br>VINSON & ELKINS LLP<br>2801 Via Fortuna, Suite 100<br>Austin, TX 78746 | |

This 14th day of December, 2010.

/s/ Robert B. Bieck, Jr.