IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| THE CITY OF NEW ORLEANS, | § § | Civil Action No. 08-3949 |
| *Plaintiff,* | § § | |
| v. | § § | Section "N" (1) |
| | § | Judge Kurt D. Engelhardt |
| AMBAC ASSURANCE CORPORATION, et al., | § § | Magistrate Judge Sally Shushan |
| | § | |
| *Defendants.* | § § | |

**MEMORANDUM IN SUPPORT OF MOTION
BY UBS SECURITIES, LLC AND PAINEWEBBER CAPITAL SERVICES, INC
TO COMPEL DISCOVERY**

Pursuant to Federal Rule of Civil Procedure 37(a)(3)(B)(i),(iv), Defendants UBS Securities, LLC ("UBS") and PaineWebber Capital Services, Inc. ("PWCSI") (collectively, "Defendants") move to compel Plaintiff the City of New Orleans ("the City") to produce certain documents clawed back or withheld as privileged. Defendants further move to compel the City to testify regarding certain deposition topics relating to advice provided by the City's bond counsel, and to allow non-party Meredith Hathorn to testify on certain topics the City claims are privileged.

**I. BACKGROUND**

The City commenced this action in 2008, in the wake of the rapid deterioration of the credit rating of Ambac Assurance Corporation ("Ambac"), the City's surety provider, that occurred at the outset of the credit crisis. The City filed this lawsuit more than seven years after it successfully raised $180,000,000 in a municipal bond issuance underwritten by UBS and insured by Ambac. At the time of that bond issuance, in December 2000, the City entered into a number of agreements with the Defendants and Ambac, including an interest-rate swap

agreement and a surety bond agreement, related to the issuance (the "Bond Transaction").  The City made no complaints concerning Defendants' involvement at any time from December 2000 through early 2008.

By early 2008, the global markets were experiencing an unprecedented credit and financial crisis, with effects continuing even today.  As happened with many other insurers, the credit rating agencies significantly downgraded Ambac's credit rating, which in turn made the City's bonds impossible to remarket.  As a result, certain contractual protections the City—with the aid of its advisors—had built into its combination of contracts took effect, and the City began paying a higher interest rate on the Bonds.  Shortly thereafter, the City sued UBS, its affiliate, PWCSI, and others, alleging that Defendants served as its *de facto* financial advisors for the Bond Transaction and, as such, did not adequately outline the risks of the Bond Transaction.[1]

Specifically, the City maintains claims against Defendants for fraudulent inducement in issuing the bonds as structured, and for negligent misrepresentation of allegedly material facts such as the risks associated with the Bond Transaction.  In these allegations, the City claims that it had no awareness of the risks of the Bond Transaction:  Although the City had multiple advisors on the Bond Transaction—including a general financial advisor, a dedicated swap advisor, and bond counsel—the City states it was ignorant of the potential for financial loss, and thus reasonably relied on Defendants' statements and advice to its detriment.[2]  For their part, Defendants argue, and have already collected evidence supporting, that the City and its financial

---

[1] On October 14, 2010, the Court granted Defendants' motion to dismiss the City's claims for breach of the Remarketing Agreement, unjust enrichment, and tortious interference. *See* Dkt. No. 107.  In addition to the inducement and representation claims that remain, the City also maintains a breach of contract against PWCSI.

[2] *See* Plaintiff's Second Amended and Supplemental Complaint ("Complaint"), filed August 4, 2010 [Dkt. No. 83], ¶¶ 161-171 (stating City was unaware of risks of Bond Transaction, that City relied on Defendants' advice on the Bond Transaction, and that reliance was reasonable because UBS and PWCSI owed the City a fiduciary duty).

advisors were fully advised on, and had full awareness of, all material risks associated with the Bond Transaction.[3]

This motion to compel relates to the advice the City received from its bond counsel, discovery on which Defendants requested in their First Set of Requests for Production of Documents,[4] Second Amended Notice of Rule 30(b)(6) Deposition,[5] and Subpoena to Testify served on Meredith Hathorn.[6] On May 2, 2011, the City responded to Defendants' Requests for Production and generally objected to the Requests to the extent that the documents requested are privileged.[7] On May 12, 2011, Defendants wrote the City asserting its position that the City had waived privilege as to certain topics by placing communications with its advisors, including communications with its bond counsel Meredith Hathorn and her law firm Foley & Judell L.L.P., at issue in the litigation.[8] The City responded on May 26, 2011, arguing that no such waiver occurred.[9]

---

[3] *See* Deposition of Jeff Pearsall (taken May 31, 2011) 85:10-17 (Pearsall, the City's dedicated swap advisor, stating that he is "confident at some point [he] discussed these risks with [the City's financial advisor] and how they would be mitigated"), attached as Exhibit A to the Declaration of Alithea Z. Sullivan ("Sullivan Declaration") (July 11, 2011), which in turn is attached as Exhibit 1 hereto.

[4] *See* Defendants' First Request for Production to the City (served on March 9, 2011), attached as Exhibit B to Sullivan Declaration; *see also* Sullivan Declaration ¶ 6.

[5] *See* Defendants' Second Amended Notice of Rule 30(b)(6) Deposition to the City (served on June 14, 2011), attached as Exhibit C to Sullivan Declaration; *see also* Sullivan Declaration ¶ 6.

[6] Defendants' Subpoena to Testify at a Deposition in a Civil Action to Meredith Hathorn (served on March 15, 2011), attached as Exhibit D to Sullivan Declaration; *see also* Sullivan Declaration ¶ 6.

[7] Sullivan Declaration ¶ 7; The City of New Orleans' Responses to UBS Securities, LLC and PaineWebber Capital Services, Inc.'s First Request for Production (served on May 2, 2011), attached as Exhibit E to Sullivan Declaration.

[8] Sullivan Declaration ¶ 8; Letter from Alithea Z. Sullivan, Counsel for Defendants, to Erin E. Gilson, Counsel for the City (May 12, 2011), attached as Exhibit F to Sullivan Declaration.

[9] Sullivan Declaration ¶ 9; Letter from Erin E. Gilson, Counsel for the City, to Alithea Z. Sullivan, Counsel for Defendants (May 26, 2011), attached as Exhibit G to Sullivan Declaration.

On June 16, 2011, the City responded to Defendants' 30(b)(6) Notice, objecting to many of the deposition topics.[10] Among other topics, the City objected to questions regarding "[t]he selection and hiring of advisors retained by the City relating to the Bond Transaction" (Topic 3); "[a]ny advice the City received from its advisors on the Bond Transaction" (Topic 4); "[a]ny advice the New Orleans City Council received relating to the Bond Transaction" (Topic 10); "[a]ll communications with the City's advisors relating to the Bond Transaction including any advice the New Orleans City Council received regarding the Bond Transaction" (Topic 11); and "[a]ny alternatives, offers, or suggestions for financing or structuring the City was presented or considered in lieu of or in conjunction with the Bond Transaction" (Topic 13), to the extent they reach any privileged advice either the City or the City Council received from advisors that were the City's legal counsel on the Bond Transaction.[11] In a letter dated June 24, 2011, Defendants objected to these privilege assertions as waived under the same rationale set forth in their May 12 letter.[12]

Defendants and the City met and conferred on this dispute, as required by Federal Rule of Civil Procedure 37(a)(1), on June 27, 2011, but failed to reach agreement as to whether the City has waived privilege. The City confirmed that it would continue to withhold all documents it deems privileged, and would instruct its deposition witnesses and third-party witnesses such as Ms. Hathorn not to answer questions relating to advice provided by bond counsel to the City and New Orleans City Council.[13]

---

[10] Sullivan Declaration ¶ 10; Letter from Erin E. Gilson, Counsel for the City, to Counsel for Defendants (June 16, 2011), attached as Exhibit H to Sullivan Declaration.

[11] Sullivan Declaration ¶ 10; Gilson Letter, Ex. H to Sullivan Declaration.

[12] Sullivan Declaration ¶ 11; Letter from Alithea Z. Sullivan, Counsel for Defendants, to Erin E. Gilson, Counsel for the City (June 24, 2011), attached as Exhibit I to Sullivan Declaration.
[13] Sullivan Declaration ¶ 12.

## II. LAW AND ARGUMENT

### A.  Scope of Attorney-Client Privilege

Under Louisiana law, the attorney-client privilege attaches to any "confidential communication . . . made for the purpose of facilitating the rendition of professional legal services to the client . . . when the communication is: (1) Between the client or a representative of the client and the client's lawyer . . ." LA. CODE EVID. ANN. art. 506(B). "The party resisting discovery by asserting any privilege bears the burden of proof sufficient to substantiate its privilege claim and cannot rely merely on a blanket assertion of privilege." *Evans v. United Fire & Cas. Ins. Co.*, No. 06-6783, 2007 WL 2323363, at *3 (E.D. La. Aug. 9, 2007); *see also In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001).

The privilege is not absolute. It can be waived "by engaging in affirmative acts that 'create[] some further detriment to the truth-seeking process in addition to that already taken into account in the creation of the privilege itself.'" *Boyd v. St. Paul Fire & Marine Ins. Co.*, 775 So. 2d 649, 656 (La. Ct. App. 2000) (quoting *Smith v. Kavanaugh, Pierson, & Talley*, 513 So. 2d at 1138) (La. 1987). Louisiana law is clear that waiver can result whenever the privilege-holder engages in "conduct which would make it unfair for the [privilege-holder] to insist on the privilege thereafter," such as when a party places privileged communications at issue. *Smith*, 513 So. 2d at 1143 (citation omitted).

### B.  UBS Is Entitled to Discover Advice Provided by the City's Bond Counsel Concerning Financial Assessments Related to the Bond Transaction

In a municipal bond issuance like that involved here, bond counsel is primarily responsible for issuing an opinion representing "that the bonds constitute legal, valid, and binding obligations of the issuer, and that interest on the bonds is exempt from federal taxation under applicable tax laws." JUDY WESALO TEMEL, THE BOND MARKET ASSOCIATION, THE

5

FUNDAMENTALS OF MUNICIPAL BONDS 10 (John Wiley & Sons, Inc. 5th ed. 2001). Defendants are not seeking privileged documents or communications relating to these types of activities by the City's bond counsel.

Although bond counsel's primary responsibility is to opine on the validity and legality of a bond issuance, she may render other services, as well—for example, assisting with the structuring of the bonds themselves and analyzing the attendant business conditions and financial risks of entering the bond transaction.[14] These latter services and analyses constitute business, rather than legal, advice. To the extent bond counsel provides a municipality "[a]dvice or services of a business or financial nature," this advice, and documents and communications related to this advice, are not protected by the attorney-client privilege. *See Abbott v. Equity Group*, No. 86-4186, 1988 WL 86826, at *2 (E.D. La. Aug. 10, 1988) (citing *United States v. Davis*, 636 F.2d 1028, 1043 (5th Cir. 1981)).

In this case, the City asserts it was ignorant of the risks of the Bond Transaction, including the risk of entering into a swap agreement, its choice to use Ambac as a surety provider, and its decision to issue variable-rate, rather than fixed-rate, bonds.[15] Notably, the topics about which the City now pleads ignorance implicate economic and financial issues, such as interest-rate forecasts and the possibility of rate hikes, the prospects for credit insurer defaults, and anticipated rates of return on investment, that are normally the province of financial advisors rather than that of lawyers. To test the City's unsupported claims of ignorance, Defendants seek information concerning what advice the City received concerning these *financial and*

---

[14] Mary Anne Braymer & Linda E. Smoke, *Securities Fraud and the Governmental Issuer*, 16 Colo. Law. 1392, 1400 (1987).

[15] Complaint ¶¶ 9, 12-13, 161-171; City's Answers to First Set of Interrogatories Propounded by Defendants (served on May 2, 2011), at 19-21 (listing the purportedly material facts that were allegedly omitted), attached as Exhibit J to Sullivan Declaration.

*economic*—not legal—risks. If the City's bond counsel merely verified the legality of bond documents, no such advice was given by counsel and there should be no evidence on the topic. If, however, the City's bond counsel gave financial advice about the risks and benefits of the Bond Transaction, then the City should be compelled to respond fully. *See Taylor Energy Co., LLC v. Underwriters of Lloyd's London*, No. 09-6383, 2010 WL 3952208, at *2 (E.D. La. Oct. 7, 2010) (stating that business advice that is unrelated to legal advice is not protected by the attorney-client privilege even when it is between an attorney and a client).

For this reason, the City is unjustified in its blanket objections to Defendants' discovery requests, most notably Deposition Topic 13 (seeking "[a]ny alternatives, offers, or suggestions for financing or structuring the City was presented or considered in lieu of or in conjunction with the Bond Transaction"). At a maximum, this topic only tangentially implicates legal analysis, and instead focuses on the business aspects of the Bonds. Many of Defendants' other discovery requests call in part for similar business-related information.[16] Accordingly, to the extent such business-related advice was given by the City's bond counsel, the City is obliged to provide it regardless of its source.[17]

**C.     By Putting the Advice It Received by Its Bond Counsel at Issue, the City Has Waived Any Privilege as to Communications Related to That Advice**

Even if some communications between the City and its bond counsel could be considered legal advice, the City waived any claim to attorney-client privilege as to communications

---

[16] *See, e.g.*, 30(b)(6) Notice, Ex. C to Sullivan Declaration, Deposition Topic 4 (regarding "[a]ny advice the City received from its advisors on the Bond Transaction"); Topic 10 ("[a]ny advice the New Orleans City Council received relating to the Bond Transaction") Topic 11 ("[a]ll communications with the City's advisors relating to the Bond Transaction including any advice the New Orleans City Council received regarding the Bond Transaction"); Defendants' Requests for Production, Ex. B, Request for Production 1 (requesting "[a]ll documents and communications relating to the Bond Transaction").

[17] Defendants are currently unaware of the extent of documents implicated by this argument because the City's privilege log does not sufficiently detail the substance of the documents it is currently withholding for privilege. Defendants have requested that the City revise its privilege log to include such detail but at the time of this filing have not received the revised log.

concerning the risks of the Bond Transaction by putting the advice of its advisors at issue in this lawsuit. Because the City "voluntarily . . . consent[ed] to disclosure of any significant part of the privileged matter," LA. CODE EVID. ANN. art. 502(A), it has waived privilege as to communications concerning advice on the risks of the Bond Transaction.

The seminal case in Louisiana on waiver of privilege, *Smith v. Kavanaugh, Pierson & Talley*, 513 So. 2d 113 (La. 1987), sets forth the general rule on waiver of privilege. Under *Smith*, the central inquiry in determining whether there has been a waiver of privilege is unfairness: Privilege is waived when the privilege-holder engages in "conduct which would make it unfair for the [privilege-holder] to insist on the privilege thereafter." 513 So. 2d at 1143. Among other instances, a party will be deemed to have waived privilege when he places privileged communications at issue; that is, when "the privilege holder has committed himself to a course of action that will require the disclosure of a privileged communication" or made "an affirmative pleading of a claim or defense that inevitably requires the introduction of privileged communications." *Id.* at 1143-44, 1146.

The Eastern District of Louisiana has found waiver in a case similar to this—where the plaintiff claims the defendant had a duty, but failed, to provide certain advice, and the failure to disclose caused the plaintiff harm. *See Asset Funding Group, LLC v. Adams & Reese, LLP*, No. 07-2965, 2008 WL 927937 (E.D. La. Apr. 4, 2008). In *Asset Funding Group*, the plaintiff alleged the defendant law firm "failed to advise [it] to properly investigate the environmental issues" relating to its purchase of property. *Id.* at *7. Noting that waiver is appropriate when "there has been 'misuse by the privilege-holder or unfairness to his opponent,'" the magistrate judge allowed discovery of communications with plaintiff's other attorneys on the grounds that "it would be unfair to prevent Adams from discovering information on Asset's claim regarding

the environmental remediation" because the plaintiff's allegations led to the "question of whether Asset knew of and was advised by other law firms about the historical environmental contamination on the properties." *Id.* (quoting *Smith*, 513 So. 2d at 1146; *see also Asset Funding Group, LLC v. Adams & Reese, LLP*, No. 07-2965, 2008 WL 4186884, at *5 (E.D. La. Sept. 9, 2008) (affirming this aspect of the magistrate's decision); *Guaranty Corp. v. Nat'l Union Fire Ins. Co.*, No. 90-2695, 1992 WL 365330 (E.D. La. Nov. 23, 1992) (finding waiver of privilege because the plaintiff could not satisfy its burden of proof without disclosing otherwise privileged documents); *State v. Dominquez*, 52 So. 3d 1117, 1119-20 (La. Ct. App. 2010) (finding waiver under *Smith* because, in asserting that his waiver of the right to a jury trial was not knowingly and intelligently made, the defendant "committed himself to a course of action that requires disclosure of conversations he had with counsel about the waiver issue").

Here, the City pursues two claims against Defendants that require disclosure of attorney advice on the Bond Transaction. First, the City claims negligent misrepresentation,[18] alleging that it was unaware of "catastrophic risks" and other information concerning the Bond Transaction and that Defendants' failure to disclose these risks caused the City harm.[19] Second, the City pursues a claim of fraudulent inducement, contending that Defendants' failure to inform the City of the information described above led it to enter into the bond-issuance agreements.[20] Under Louisiana law, each of these claims hinges on the City's state of mind—specifically, its contemporaneous knowledge of the risks of the Bond Transaction—because the City must prove it *justifiably* relied upon the representations or omissions it alleges. Negligent misrepresentation

---

[18] Complaint ¶¶ 169-71.

[19] *Id.* ¶¶ 163, 168, 171; *see also* Interrogatory Responses, Ex. J to Sullivan Declaration, at 19-21 (naming purportedly material facts that were allegedly omitted by Defendants).

[20] Complaint ¶¶ 165-68; *see also* Interrogatory Responses, Ex. J to Sullivan Declaration, at 22 (discussing what City allegedly would have done if it had known of the facts allegedly omitted or misrepresented by Defendants).

requires the plaintiff to establish "damages resulting from a justifiable reliance on the misrepresentation." *Campo v. Allstate Ins. Co.*, 727 F. Supp. 2d. 495, 498 (E.D. La. 2010). For its part, fraudulent inducement requires the plaintiff to prove the misrepresentation of a material fact "caus[ed] justifiable reliance with [a] resultant injury." *Davis v. Karl*, No. 10-875, 2010 WL 3312587, at *3 (E.D. La. Aug. 19, 2010) (quoting *Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, 527 F.3d 412, 418 (5th Cir. 2008)).[21] To arrive at the truth of the City's claims—namely, to determine whether the City relied upon Defendants' alleged representations and omissions and, if so, whether its reliance was justified—the advice and information the City received on the Bond Transaction (from whatever source, including its bond counsel), as well as the information and resources available to it at the time, must be considered. The City's misrepresentation and inducement claims thus constitute precisely the "affirmative pleading of a claim . . . that inevitably requires the introduction of privileged communications" envisioned under *Smith*.

The unfairness of the City's position should not be doubted. On the one hand, the City alleges Defendants are liable to it because they failed to tell the City something the City did not know (and could not have known). On the other hand, the City objects to producing documents and information that evidence what the City knew (or should have known) during the relevant time. This inequitable result is precisely what that the *Smith* decision was intended to prevent.

---

[21] *See also Henry v. Cisco Sys., Inc.*, 106 F. App'x 235, 239 (5th Cir. 2004) ("[T]he general elements of a fraudulent inducement claim are: '(1) a misrepresentation of a material fact, (2) made with an intent to deceive, and (3) causing justifiable reliance with resulting injury.'") (quoting *Kendall Co. v. S. Med. Supplies, Inc*., 913 F. Supp. 483, 487 (E.D. La. 1996)). This element is often described as the requirement that "the error induced by a fraudulent act . . . relate to a circumstance substantially influencing the victim's consent to (a cause of) the contract." *Shelton v. Standard/700 Assocs.*, 798 So. 2d 60, 64 (La. 2001). Whether described as "substantial influence" or "justifiable reliance," the requirement remains. *See Howard v. La. Citizens Property Ins. Corp*., --So. 3d --, 2011 WL 1880684, at *7 (La. Ct. App. Apr. 27, 2011) ("To succeed on a claim of fraudulent inducement, Mr. Howard has to satisfy all three elements of a fraud action."); *Sun Drilling Prods. Corp. v. Rayborn*, 798 So. 2d 1141, 1153 (La. Ct. App. 2001) (stating that a plaintiff alleging fraud "must at least be able to say that had he known the truth, he would not have acted as he did to his detriment. Whether this element is labeled reliance, inducement, or causation, it is an element of a plaintiff's case for fraud.").

In short, by pursuing its claims, the City has engaged in "conduct which would make it unfair for the [privilege-holder] to insist on the privilege thereafter." *Smith*, 513 So. 2d at 1143.

Moreover, Defendants' concern about the sword-and-shield problem is warranted in light of the information now available. For one, the City retained a phalanx of dedicated attorneys and advisors *specifically* to advise it on the 2000 Bond Transaction.[22] It cuts against common sense to believe the City entered these engagements, but was satisfied receiving insufficient advice about the risks of the Bond Transaction. Second, there is evidence that the City's bond counsel was aware of the potential risks and benefits of the Bond Transaction at the time it was decided. City Council Resolution R-00-464 states that the City's bond counsel was retained in July 2000 "to do and perform comprehensive legal *and other professional work* with respect to the issuance and sale of the bonds."[23] And the City's bond counsel, Meredith Hathorn, stated during a 2004 Louisiana State Bond Commission meeting that "the City has been having a swap that has worked exactly like they planned on having it work[.]"[24] Ms. Hathorn's statement that the Bond Transaction was performing in line with the City's expectations after four years suggests prior knowledge about how the Bond Transaction was supposed to work and what the City's expectations about it were from the inception. All told, this evidence indicates the City's bond counsel knew—and likely advised on—the potential risks of the Bond Transaction.

Courts in other jurisdictions have found waiver in strikingly similar circumstances. In the case *Union County, Iowa v. Piper Jaffray & Co., Inc.*, Union County filed a lawsuit against defendant Piper Jaffray & Co., asserting claims for breach of fiduciary duty, negligent

---

[22] *See* Interrogatory Responses, Ex. J to Sullivan Declaration, at 9-10 (naming City's advisors).

[23] Resolution R-00-464, dated August 3, 2000 (reflecting City Hall meeting of July 20, 2000), attached as Exhibit K to Sullivan Declaration.

[24] Verbatim Transcript of State Bond Commission Meeting, Oct. 21, 2004, at 57:2-3, attached as Exhibit L to Sullivan Declaration.

misrepresentation, and fraud based on the allegation that Piper served as Union County's financial advisor in a bond offering.  248 F.R.D. 217, 218 (S.D. Iowa 2008).  Piper moved the court to compel Union County to "provide documents and/or information concerning the professional advice it received in connection with the bond offerings . . . ."  *Id.*  In response, Union County argued the documents were protected by the attorney-client privilege and thus not discoverable.  *Id.*  Although the court applied a different waiver test than the one applicable to the case at bar,[25] the court noted "that several of Union County's claims *will require* it to demonstrate that it reasonably relied on Piper's advice in undertaking the financial structuring that has culminated in the present case."  *Id.* at 222 (emphasis added).  The court held that "by alleging that Piper failed to properly advise and counsel Union County . . ., Union County 'also placed in issue the reasonableness of any reliance it made on Piper Jaffray's purported advice and whether there w[ere] intervening or superseding causes, such as tax or legal advice [Union County] received from others.'"  *Id.* at 220.  Likewise here, the City's claim that Defendants gave insufficient advice *require* the City to show it reasonably relied on Defendants' alleged advice, which in turn requires investigation into the other advice the City received.

Under these circumstances, to allow the City to claim ignorance of the Bond Transaction's risks without permitting the Defendants to test the scope of this ignorance through a narrowly tailored examination of bond counsel's advice is both unfair to the Defendants and an abuse of the privilege. Because the City's allegations lead directly to the "question of whether [it] knew of and was advised by . . . law firms about" the Defendants' alleged omissions, "it

---

[25] The court applied the test established by *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975).  Under the *Hearn* test, "the attorney-client privilege is waived when the privilege-holder (1) through some affirmative act, makes an assertion that (2) renders relevant to the action (3) privileged matter that is vital to the opposing party's defense." *Smith*, 513 So. 2d at 1145 (citing *Hearn*, 68 F.R.D. at 581).

12

would be unfair to prevent [Defendants] from discovering information on" the City's claims. *See Asset Funding Group*, 2008 WL 927937, at *7.

### D. The Cases Relied Upon in the City's Correspondence Are Inapposite

The City's correspondence to Defendants cites multiple cases in support of its argument that there has been no waiver.[26] However, the decisions relied on by the City have little bearing on this case. Unlike the situations presented in those cases, inquiry into counsel's communications is necessary here to demonstrate the privilege-holder's claims. For example, in *Williams Land Co., L.L.C. v. Bellsouth Telecommunications, Inc.*, the claim that supposedly waived the privilege was an affirmative defense of good-faith reliance on a permit. No. Civ. A 02-1628, 2005 WL 94859 (E.D. La. Jan. 14, 2005). The Court concluded discovery on the legal advice provided to the privilege-holder regarding the permit was unnecessary for two reasons not present here: (1) The fact and legal effect of the permit could be scrutinized independent of any legal advice provided about it, and (2) unlike here, the affirmative defense appeared to have no requirement of *reasonable* reliance (which would have implicated all the circumstances of the privilege-holder's reliance).

*Dixie Mill Supply Co., Inc. v. Continental Casualty Co.* is distinguishable because the privilege-holder did not assert a claim or defense that placed at issue its privileged communications. 168 F.R.D. 554 (E.D. La. 1996). Rather, in *Dixie Mill*, the claim at issue was the *plaintiff*'s bad-faith insurance claim, whereas the privileged information at issue were the *defendants*' legal communications. *Id.* at 556. *Dixie Mill* is also inapposite because the legal claim at issue could be tested through outside sources: The court concluded that "[t]he reasonableness of the insurers' actions in a bad faith case can be proved by objective facts," and that waiver is inappropriate where "the relevant question is not what legal advice was given . . .

---

[26] *See* Gilson Letter, Ex. G to Sullivan Declaration.

but what *facts* the party knew and when." *Id.* at 558-59 (emphasis added) (quoting *Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co.*, No. 90 Civ. 7811, 1994 WL 510043, at *12 (S.D.N.Y. Sept. 16, 1994)). Here, in contrast, the knowledge at issue does not chiefly concern the awareness of *facts* that are ascertainable through other methods of discovery, but of economic and financial estimates, projections, warnings, and opinions provided by the City's advisors, including by its experienced attorneys. These sorts of advisory information are not discoverable through other means, and require disclosure. Quite simply, there is no other way for Defendants to test the City's crucial assertions that it was unaware of the risks of the Bond Transaction, and that it justifiably relied on Defendants' alleged representations and omissions about it, without discovering *all* advice it received on the matter.[27]

### III. CONCLUSION AND PRAYER FOR RELIEF

For the reasons above, Defendants are entitled to discovery concerning the issue of what advice the City was provided concerning the alleged misrepresentations and omissions set forth in Paragraph 163 of Plaintiff's Second Amended Complaint, most notably the risks of the Bond Transaction. Defendants therefore respectfully request this Court to compel the City to produce any documents it is currently withholding or that are otherwise in its possession, custody, or control, that pertain to this advice; compel the City to provide testimony on Topics 3, 4, 10, 11, and 13 set forth in Defendants' Second Amended Notice of Rule 30(b)(6) Deposition, to the extent it concerns this advice; and order the City to allow bond counsel, including Meredith Hathorn, to answer questions relating to this advice at her deposition.

---

[27] *See Union County*, 248 F.R.D. at 223 (finding waiver and stating "at the very core of Union County's allegations is the assertion that it relied on Piper's advice to its detriment, an allegation the truth of which may only be assessed by the examination of privileged communications").

Respectfully submitted,

*/s/ Meredith A. Cunningham*
**BARRASSO, USDIN, KUPPERMAN, FREEMAN & SARVER, LLC**
George C. Freeman, III, Louisiana Bar No. 14272
Stephen H. Kupperman, Louisiana Bar No. 17890
Meredith Cunningham, Louisiana Bar No. 26465
909 Poydras Street, Suite 2400
New Orleans, LA 70112
504-589-9700

**FRESHFIELDS BRUCKHAUS DERINGER US LLP**
Walter B. Stuart, Louisiana Bar No. 12551
520 Madison Avenue, 34th Floor
New York, NY 10022
212-230-4650

**VINSON & ELKINS LLP**
David R. Woodcock, Jr.
The Terrace 7
2801 Via Fortuna Drive
Austin, TX 78746
512-542-8637

**VINSON & ELKINS LLP**
Kenneth P. Held
First City Tower
1001 Fannin Street
Suite 2500
Houston, TX 77002-6760
713-758-4353

**COUNSEL FOR UBS SECURITIES, LLC AND PAINEWEBBER CAPITAL SERVICES, INC.**

## **C E R T I F I C A T E**

      I hereby certify that on July 12, 2011, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants. I further certify that a true and correct copy of the foregoing has been personally served by hand delivery on the following counsel of record on this 12th day of July, 2011: (i) Robert B. Bieck , Jr., Erin E. Gilson, Avione Pichon, JONES WALKER, Place St. Charles, 201 St. Charles Ave., Suite 5100, New Orleans, LA 70170-5100; and (ii) Brenda M. Breaux, Nannette V. Jolivette, CITY ATTORNEY'S OFFICE, City Hall, 1300 Perdido Street, 5th Floor, New Orleans, LA 70112; and I mailed the foregoing document and the notice of electronic filing by first-class mail to all non-CM/ECF participants..

                                                                         */s/ Meredith A. Cunningham*