# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **THE CITY OF NEW ORLEANS** | **CIVIL ACTION** |
| **VERSUS** | **NO: 08-3949-KDE-SS** |
| **AMBAC ASSURANCE CORPORATION, et al** | |

## ORDER

DEFENDANTS' MOTION TO COMPEL (Rec. doc. 153)

**GRANTED IN PART AND DENIED IN PART**

The defendants, UBS Securities, LLC ("UBS") and PaineWebber Capital Services, Inc. ("PWCSI"), filed a motion to compel the plaintiff, the City of New Orleans ("the City"), to: (1) produce documents which the City contends are protected from disclosure by the attorney-client privilege; (2) designate a representative to testify concerning advice provided by the City's bond counsel, Meredith Hathorn of the Foley and Judell, L.L.P. law firm; and (3) authorize Hathorn to testify on these same topics.

The defendants contend that: (1) Hathorn gave the City both financial and legal advice on a bond transaction; (2) the financial advice on the risks and benefits of the transaction is not protected from disclosure; and (3) the City waived the privilege for the legal advice.  The parties agree that <u>Smith v. Kavanaugh, Pierson & Talley</u>, 513 So.2d 113 (La. 1987), sets forth the general rule on waiver of privilege.

> Under the anticipatory waiver theory, which we adopt herein, the court is not invited to readjust the cost-benefit balance struck by the legislature in establishing the attorney-client privilege.  Waiver does not depend merely upon the relevance of privileged communications or upon the court's impression as to how badly the

opposing party needs the evidence.  Under the anticipatory waiver theory the court must concern itself solely with whether the privilege holder has committed himself to a course of action that will require the disclosure of a privileged communication.

Id. at 1146.

Counts V, VI and VIII of Second Amended and Supplemental Complaint ("Complaint") describe the City's claims against UBS and PWCSI (collectively the "defendants").[1]  Count V is described as "Fraud in the Inducement of Contract #2."  Seven material facts are described in paragraph no. 163.  For example, the sixth one is "the conflicts of interest arising from the structure recommended by PW (now UBS) into which PWCSI, Ambac and AFS had input and that all of them approved and to which the City ultimately agreed to issue the Bonds."  Rec. doc. 83 at 73.  The City alleges that UBS and PWCSI had a duty to disclose these material facts for several reasons, including UBS's alleged fiduciary duty and PWCSI's status as a swap counterparty to the City.  The City contends that: (1) UBS and PWCSI knew the facts described in paragraph no. 163 were material and that the City relied on their duty to disclose such facts; (2) the non-disclosure of these facts was intended to induce the City to issue the bonds; and (3) the City justifiably or reasonably relied on their duty to disclose the material facts.  Finally, the City alleges that:

> If the City had known of the facts listed in paragraph 163 of this Complaint above, the City would not have entered into the overall agreement for credit enhancement with Ambac, purchased the Policy from Ambac, entered into the Swap with PWCSI or issued the Bonds as actually structured.

Rec. doc. 83 at 75.

Count VI is described as "Negligent Misrepresentation."  Counts V and VI rely on the same

---

[1]  The City also sued Ambac Assurance Corporation ("Ambac") and Ambac Financial Services, LLC ("AFS").  Rec. doc. 83.  The District Judge granted the motion of Ambac and AFS to dismiss.  The motion of UBS and PWCSI was granted in part and denied in part with only the claims in Counts V, VI and VIII remaining.  Rec. doc. 107.

allegations.  Rec. doc. 83 at 75-76.  The District Judge described Count VI as an alternative to Count V.  Rec. doc. 129 at 54.  It merely states that the defendants "negligently misrepresented or failed to disclose the material facts listed in paragraph 163 of this Amended Complaint."  Rec. doc. 83 at 76.

Count VIII is described as "Breach of the SWAP #1."  The City alleges that: (1) pursuant to the reciprocal swap agreement, AFS provided for PWCSI to transfer all of its rights and options under the swap to Ambac; and (2) PWCSI's entry into the reciprocal swap and transfer of control over the swap to Ambac violated Section 7 of the swap, because PWCSI failed to provide prior notice to the City of the transfer of rights and options to Ambac and AFS.  Rec. doc. 83 at 77.

The City argues that its allegations of fraudulent inducement and negligent misrepresentation arise from two facts: (1) during the structuring of the bond transaction, the City relied upon the advice of UBS and PWCSI to enter into the transaction; and (2) they "never told the City that at the time of the Bonds Transaction PWCSI had entered into a Reciprocal Swap with (AFS) . . . despite PWCSI's contractual duty to do so under Section 7(a)(iii) of its Swap Agreement with the City."  Rec. doc. 157 at 2.  The defendants contend that this characterization of the City's claims differs significantly from what it actually alleges in Counts V, VI and VIII.  The defendants are correct. The allegation concerning the contractual duty to report PWCSI's entry into a reciprocal swap only appears in Count VIII.  None of the alleged "material facts" found in paragraph 163 refer to the alleged contractual duty to report that PWCSI had entered into a reciprocal swap.  The allegations must be read as they appear in the Complaint and not as described by the City.

The claims for fraudulent inducement and negligent misrepresentation rest, in part, on the allegation that if the City had known of the alleged material facts in paragraph 163, it would not

3

have entered into the transactions.  Rec. doc. 83 at 75.  The City alleges that: (1) as of December 18, 2000, it had never entered into such transaction; (2) it had no experience with a financial transaction as complex as the one proposed by PWCSI; (3) the City's non-lawyer advisors were not independent; (4) the proposed transaction was so complex as to be beyond the abilities of experienced and independent advisors; and (5) the City's lawyers had no duty to provide financial advice to the City.  Rec. doc. 83 at 14 and 15.

In response to the defendants' contention that they should be able to question Hathorn about any non-legal advice to the City concerning the bond transaction, the City contends that she did not provide any financial or business advice.  The defendants are entitled to question Hathorn to confirm this information.  They are entitled to ask Hathorn if she knew of the existence of any of the material facts described in paragraph 163 and if so, did she communicate that to the City.  If she knew of any material facts and communicated them to the City, she contradicts the allegations in paragraph 168 of the second amended and supplemental complaint.  If she cannot answer these questions without disclosing privileged communications, the City has committed itself to a course of action that will require the disclosure of a privileged communication and they must be disclosed.  Smith, 513 So.2d at 1146.  Except for the City's knowledge or lack of knowledge of the material facts, the City has not committed itself to a course of action which requires disclosure of privileged communications.

The City's reliance on Williams Land Company, LLC v. BellSouth Telecommunications, Inc., 2005 WL 94859 (E.D. La.) (Shushan, M.J.), is misplaced.  There, the plaintiff contended that BellSouth could not resort to a defense of good faith reliance on a permit and not produce attorney-client communications on the issue of good faith.  BellSouth was not required to produce such communications because it did not contend that it relied on the legal advice in making the decision

4

to place the equipment on plaintiff's land.   In the instant case, the City must prove by a preponderance of the evidence that it had no knowledge of the material facts described in paragraph 163.  What Hathorn knew about these material facts and what she communicated to the City must be disclosed to establish that the City had no knowledge of the material facts.

The City's reliance on <u>Dixie Mill Supply Co. Inc. v. Continental Casualty Company</u>, 168 F.R.D. 554 (E.D. La. 1996) (Wilkinson, M.J.), is also misplaced.  The plaintiff sought the insurer defendant's attorney-client communications relating to its denial of a claim that it acted in bad faith. The Magistrate Judge found that if the plaintiff's argument was accepted, any claim that a defendant acted in bad faith would require the defendant to produce attorney-client communications.  The Magistrate Judge held that there was no blanket waiver of the attorney-client privilege in a bad faith insurance case.  <u>Id</u>. at 558.  In the instant action it is not the defendants' allegations which are at issue.  It is the City that has alleged that it had no knowledge of certain material facts and it is the City that has alleged that its counsel did not provide any non-legal advice.

Hathorn may be questioned by the defendants as described above.  Only if she is unable to answer the questions without disclosing privileged communications, is she required to disclose such communications.

IT IS ORDERED that the motion of UBS and PWCSI to compel discovery (Rec. doc. 153) is GRANTED in PART and DENIED in PART as provided herein.

New Orleans, Louisiana, this 30th day of August, 2011.

**SALLY SHUSHAN**
**United States Magistrate Judge**