UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THE CITY OF NEW ORLEANS | CIVIL ACTION |
| VERSUS | NO. 08-3949 |
| AMBAC ASSURANCE CORPORATION, *et al.* | SECTION "N" (1) |

## ORDER & REASONS

Now before the Court are Defendants', UBS Securities, LLC and PaineWebber Capital Services, Inc. ("Defendants"), Motions *in Limine* to exclude Plaintiff's, the City of New Orleans ("the City"), "new allegations" that Defendants misrepresented certain information related to the transaction at issue in this case. (Rec. Doc. 239). The City filed a response in opposition (Rec. Doc. 242), and Defendants filed a reply (Rec. Doc. 245). For the reasons stated herein,

**IT IS ORDERED** that the Motions *in Limine* are hereby **GRANTED**, and the City's substantive claims are limited to its existing causes of action, Counts V, VI, and VIII. In addition, any evidence of the four misrepresentations at issue in these motions is declared inadmissible at trial.

**I. Background**

This case arises out of variable rate municipal bonds issued by the City in 2000 in the principal amount of $170,660,000 to fund the City's firefighter pension fund. (Rec. Doc. 242 at p.

1

2).  Defendants (PaineWebber, Inc., later UBS, as successor-in-interest) served as underwriter for the bonds.  To manage the variable interest rate risk associated with the bonds, the City entered into an interest rate swap agreement (the "Swap") with Defendants, whereby the City agreed to pay Defendants a fixed rate of interest, and Defendants paid the weekly variable rate.  Unbeknownst to the City, Defendants then entered into a reciprocal swap ("Reciprocal Swap") with an AMBAC affiliate, AMBAC Financial Services, LLC ("AFS"), whereby Defendants agreed to pay AFS a fixed rate, and AFS assumed the risk of the variable rate.  In the financial crisis of 2008, the bonds became unmarketable causing AMBAC to exercise its rights under the Reciprocal Swap, thereby triggering a provision of the Swap between Defendants and the City.  As a result, the City was forced to refinance the bonds and terminate the Swap.

The City brought suit on July 17, 2008, against AMBAC, AFS, and Defendants.  On October 10, 2010, this Court dismissed all claims against AMBAC and AFS. (Rec. Doc. 107).  In addition, the City sued Defendants under various theories, and this Court dismissed all claims against Defendants except the following: (1) fraud in the inducement (Count V); (2) negligent misrepresentation (Count VI); and (3) breach of the Swap agreement (Count VIII).  Counts V and VI relate to information that Defendants are alleged to have fraudulently omitted.  (Rec Doc. 83 at p. 72-73).  In October of 2011, on the City's unopposed motion, the parties administratively closed the case pending potential settlement negotiations.  (Rec. Doc. 169).  After such talks proved ineffective, the City moved to reopen the case in November of 2013, and the Court granted the motion. (Rec. Doc. 210).  The Court issued an updated scheduling order indicating that the time to amend pleadings, cross-claims, and counter-claims had passed.  (Rec. Doc. 212).  During the additional discovery period, the City served on Defendants a combined answer to Defendants' Third

Set of Interrogatories and Supplemental and Amended Answers to Defendant's First Set of Interrogatories ("Supplemental Response") (Rec. Doc. 228, Exh. A), which included the following new allegations of misrepresentations: (1) UBS provided false information to the City, which allowed UBS to price the Swap at a considerably higher rate; (2) UBS provided false information regarding the savings that the synthetic fixed rate bonds would achieve; (3) UBS assured the City that its 10.7% rate of return was reasonable; and (4) UBS told the City that it was not entering into a novel deal, but the same kind of deal other municipalities had previously conducted. (Id.). Defendants moved for a Rule 16 Conference to define the scope of the Second Amended Complaint ("the Complaint") as it pertains to the "new allegations" of misrepresentation. During that conference, this Court directed the parties to file motions *in limine* to address the issues raised in their Rule 16 Motion. (Rec. Doc. 237). Specifically, the Court directed the City to indicate why these "new allegations" were being raised at such a late date when evidence of these assertions was available to the parties back in 2008. Id. Now before the Court are Defendants' Motions *in Limine* requesting that the Court to limit the City's claims to the causes of action left in the Complaint (Counts V, VI, and VIII) and to prohibit introduction of evidence relating to these four alleged misrepresentation at trial. (Rec. Doc. 239).

**II. Law & Ananlysis**

Defendants argue that the four "new allegations" contained in the City's Supplemental Response were not included in the Second Amended Complaint, and the City should not be able to indirectly amend its Complaint through discovery procedures. (Rec. Doc. 239-1 at p. 4). Additionally, Defendants assert that the City has not plead these "new allegations," which pertain to affirmative misrepresentation, with specificity as required by Rule 9(b) of the Federal Rules of

3

Civil Procedure.  (Id.).  The City responds declaring that it has no intention of raising the misrepresentations as substantive claims, instead, that the City intends to rely on the misrepresentations as evidence "that goes toward the fraud and breach of contract claims already pled."  (Rec. Doc. 242 at p. 1).

**A. Misrepresentations as Causes of Action**

Rule 9(b) requires the plaintiff to set forth the "who, what, when, where, and how" of the alleged fraud.  See, e.g., United States ex rel. Steury v. Cardinal Health, Inc., 625 F.3d 262, 266 (5th Cir. 2010);  see also Sullivan v. Leor Energy,LLC, 600 F.3d 542, 550-51 (5th Cir. 2010) ([C]laimant must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."). "At a minimum, Rule 9(b) requires allegations of the particulars of the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Tel-Phonic Services, Inc. v. TBS International, Inc., 957 F.2d 1134, 1138 (5th Cir. 1992).

To the extent that the City, in its Supplemental Response, attempts to raise the four misrepresentations as substantive claims of fraud, the Court finds that the City has not pled, much less pled with particularity as required by Rule 9(b), the allegations as claims for relief.  In fact, the City concedes in its opposition, "the four misstatements do no constitute an independent or new cause of action as to which the City seeks to recover. Rather, they are evidence...." (Rec. Doc. 242 at p. 1).  Therefore, the Court finds Defendants' Motions *in Limine* seeking to limit the City's complaint to the already existing claims found in Counts V, VI, and VIII are warranted and uncontested.

**B. Misrepresentations as Evidence of Fraud by Omission**

In their motions *in limine*, Defendants also contend that the newly alleged misrepresentations are not admissible as evidence as they do not relate to the omission claims made in the Complaint. (Rec. Doc. 239). The City claims that the misrepresentations are evidence of fraudulent intent and materiality pertaining to their existing fraud and breach of contract claims. (Rec. Doc. 242). For the reasons that follow, the Court finds Defendants' motions to exclude evidence of the four misrepresentations proper and such evidence is hereby declared inadmissible at trial.

"[A] district court has wide and flexible discretion concerning the admissibility of evidence." Dixon v. International Harvester Co., 754 F.2d 573, 584 (5th Cir.1985). When the Court first addressed Defendants' concerns about the new allegations as substantive claims, the Court directed the parties to submit their arguments as motions *in limine*, specifically instructing the City to include its reasons for not bringing these assertions at an earlier date. (Rec. Doc. 237 at p. 12-13). The Court expressed concerns of a "back-door" approach to pleading, especially when the parties are as far along in a proceeding as is the case here. (Id. at p.17). Defendants argued, and the Court agrees, that information upon which the City relies in forming the alleged misrepresentations has been identified and available to the City since, at least, the outset of this case filed six years ago. (See Id.; generally Rec. Doc. 242 and attachments, Rec. Doc. 239 at pp.12, 15, 18, 21). However, the City completely disregarded the Court's request for such an explanation in its response in opposition.

The court is not inclined to allow evidence of alleged misrepresentations that could have been properly pled, and thereby subject to Rule 9(b) motion practice, without some explanation as to the basis for delay. After more than three years of active litigation and two years of

5

administrative closure for purposes of settlement negotiation, the Court did not grant reopening so that the City could expand upon its claims against Defendants.  (See Rec. Doc. 212).

However, the Court recognizes the City's argument, under the holding in Chrysler Credit Corp. v. Whitney Nat. Bank, 824 F. Supp. 587 (E.D.La. 1993), that these misrepresentations are merely evidence and should be allowed.  The Court is aware of the holding in Chrysler Credit Corp., which barred claims not properly plead under Rule 9(b) but allowed evidence of fraud as it may be "probative of other propositions."  Id. at 599.  Although, in that case, the court found that the parties sought to admit evidence of fraud that was relevant to Chrysler's conversion claim, a non-fraud allegation.  Here, the City intends to rely on recently identified but long known affirmative misrepresentations, that the City could have pled alongside its current claims, as evidence of fraudulent omissions.[1]  For this reason, the Court finds that case is distinguishable.  Furthermore, the Court finds that the City's attempt to put a "Trojan Horse" packaging around these allegations to get these claims into Court as evidentiary support, all the while disguising the real purpose of the misrepresentations to serve as substantive allegations, is unfounded and misguided.  At best, the City's timing in raising these allegations is peculiar.  As a result, the Court finds that no good cause exists for the Court to allow such material additions to what has been properly pled and litigated heretofore in this case.  And, the facts simply do no justify introduction of this specific evidence under the circumstances.

Even if the Court were inclined to disregard the reasons stated above, the Court finds that

---

[1] The City does argue that Defendants' misrepresentation regarding the trading spreads pertains to Defendants' bad faith, "an issue relevant to the City's breach of contract claim." (Rec. Doc. 242 at p.16).  However, the Court points out that Count VII "Bad Faith" was alleged against AMBAC only (See Rec. Doc. 83 at p. 76), and the count has been dismissed by this Court.  To the extent that the City contends that the misstatement relates to its breach of contract claim against Defendants, the Court finds the alleged misrepresentation irrelevant as to whether Defendants provided notice of any transfer of rights.

the misrepresentations are not relevant of materiality to the City's existing fraud and breach of contract claims under Rule 401 of the Federal Rules of Evidence, nor are they probative of intent under Rules 403 and 404 such that the Court should allow evidence of these assertions at trial.  In particular, the misrepresentations are distinct acts that do no pertain to omissions regarding the structure and risks associated with the structure of the transaction or any alleged conflict of interest, and, thus, they are not relevant to proving any of the elements necessary to the City's existing claims.

New Orleans, Louisiana, this 12th day of December 2014.

_____
**KURT D. ENGELHARDT**
**United States District Judge**